Boyer v. Neel.

---

JOHN M. BOYER *et al.*, Appellants, v. JAMES D. NEEL *et al.*, Respondents.

St. Louis Court of Appeals, May 10, 1892.

1. Sales: IMPLIED WARRANTY OF SUITABILITY OF PROPERTY SOLD. The fact that machinery was purchased for a particular purpose, known at the time by the seller, but was worthless for such purpose, will not avail as a defense to an action for the purchase price of the machinery, when the allowance of such defense would be in contravention of the special provisions of the contract of sale; as where the allowance of it would contravene the terms of a special warranty of the quality and capacity of the machinery, which required a certain notification from the purchaser to the seller of any insufficiency in that respect.

2. ————: EXPRESS WARRANTY: WAIVER. Attempts by the seller to remedy defects in the machinery after the expiration of the stipulated time for such notification cannot operate as a waiver of such provisions for notification, when the contract expressly provides that they shall not have such effect.

*Appeal from the Scotland Circuit Court.*—HON. BEN. E. TURNER, Judge.

REVERSED AND REMANDED (*with directions*).

*Smoot & Pettingill,* for appellants.

*McKee & Jayne* and *R. D. Cramer,* for respondents.

THOMPSON, J.—This action is founded upon two contracts, executed by the defendants for the sum of $400 each, and also providing for an attorney's fee, if enforced by law. It was agreed at the trial that a reasonable attorney's fee would be $40. The contracts were in the form of promissory notes, with conditions, and were payable to the J. I. Case Threshing Machine Company, or bearer. They were due prior to the time of the bringing of the suit. The entire controversy arises upon the special defenses set up in the answer.

After a general denial, and then an admission of the execution of the contracts sued on, the answer proceeds to state that, on the —— day of ———— 1887, the defendants purchased of J. I. Case & Co. through the plaintiffs as their agents,—meaning as agents of J. I. Case & Co.—a ten-horse-power traction engine and one separator, with usual attachments, for which they agreed to pay the sum of $1,400, and for which, at the time, they executed their written contract to pay, the contracts sued on being a part thereof. The answer then proceeds to aver that the purchase price which the defendants agreed to pay for the engine was $1,000, and for the separator $400. It then avers that said purchase was made on a written order to said J. I. Case & Co., which order contained the following express warranty of said Case & Co. of conditions to be kept by said Case & Co. and by these defendants, to-wit: "The above machinery is warranted to be made of good material and durable; with good care and with proper usage to do as good work as any made in the United States. If it will not bear the above warranty after a

trial of ten days, written notice shall immediately be given to J. I. Case Threshing Machine Company, and the agents of whom purchased, stating wherein it fails to satisfy the warranty, and a reasonable time shall be given the J. I. Case Threshing Machine Company to send a competent person to remedy the deficiency, the purchaser rendering necessary and friendly assistance. The J. I. Case Threshing Machine Company reserving the right to replace any defective part or parts; and, if then the machinery cannot be made to fill the warranty, it is to be returned by the purchaser free of charge to the place where received, and another substituted therefor, which shall fill the warranty, or the notes and money shall immediately be returned and this contract canceled. Neither party in such case to have or make any claim against the other. All warranties to be invalid in case the machinery is not settled for when delivered, or if this warranty is changed, either by erasure, addition or waiver, or if the purchaser shall in any respect fail to comply therewith.''

Having proceeded thus far, the answer turns aside to state another defense in the following language: ''Defendants, for further answer, state that the said engine was bought for a specified purpose, to-wit: To use on the roads and pull a separator, and run a saw-mill and run a separator for threshing purposes, which facts were made known to plaintiffs, and also to them as agents of J. I. Case & Co., at the time of said purchase, and that it proved utterly worthless for the purposes it was bought for.''

Then, taking up the thread of the warranty previously pleaded, the answer continues thus: ''Defendants further state that the aforesaid machinery did not fill the aforesaid warranty in this: That the aforesaid traction engine was not made of good material, and was not durable, and would not with good care and

proper usage do work as any made in the United States. The brackets or arms extending from main shaft and attached to the sides of the boiler were not sufficient for its weight or the pressure, and in moving from place to place, or while being used as a stationary engine, with ordinary and great care and diligence, said brackets or arms would become loose, and were at the time they received it loose, and it at all times, on account of its being so defectively constructed, permitted the steam to escape and water to leak out of the boiler to such an extent, that it made it impossible to operate said machinery and rendered the same worthless. That they wholly relied upon the representations of J. I. Case & Co., made through their agents, these plaintiffs, and the warranty as to said machinery, and, believing them to be true, purchased the same and paid in cash the sum of $400 for the said separator, and executed the contract sued on in part pay for the aforesaid traction engine."

The answer, having thus pleaded what has been called by the supreme court of this state a conditional warranty (*Nichols v. Larkin*, 79 Mo. 264), did not attempt to plead a performance on the part of the defendants; but it undertook to plead a waiver of performance by J. I. Case & Co., in the following language: "Defendants further state that said J. I. Case & Co., and these plaintiffs, who were then their agents, were notified of the aforesaid failure of warranty and defective machinery, when said company sent an expert to repair and make good the same, which he attempted and endeavored to do, the defendants furnishing friendly assistance. Whereupon defendants, after again attempting to use and thoroughly trying said engine, found that the said defect and imperfection had been remedied, and notified these plaintiffs, then the agents of J. I. Case & Co., of such fact. Whereupon they

promised, and said company through them promised, to make good the warranty and remedy the aforesaid defects, and again for that purpose sent an expert machinist, who attempted so to do,—they furnishing friendly assistance,—but who failed, and left the machine defective and worthless; and so it has ever remainea. By all these acts and doings and agreements of the said J. I. Case & Co., and these plaintiffs, the condition (that, if it will not bear the above warranty after a trial of ten days, written notice shall immediately be given to J. I. Case Threshing Machine Company, and the agents of whom purchased, stating where it fails to satisfy the warranty), was waived by said company."

The rest of the answer states certain matters of counterclaim, with which we need have no concern, because the jury found in favor of the plaintiffs as to that.

Then plaintiffs filed a reply, which, after denying the new matter set up in the answer except as admitted, contained the admissions that the defendants purchased of the plaintiffs as agents of J. I. Case & Co. a ten-horse-power traction engine and separator for the price and sum of $1,400. But the plaintiffs deny specifically that the purchase price of the engine was $1,000, and that of the separator $400; but they aver the fact to be that the engine and separator were purchased for the aggregate sum of $1,400 upon a written order to J. I. Case & Co. and a limited warranty of J. I. Case & Co. as set up in the answer. The reply also denies specifically that the defendants ever complied with the terms of the warranty, or that the plaintiffs or J. I. Case & Co. ever waived the terms or conditions of the warranty, or that the defendants ever gave J. I. Case & Co. any written notice of any defect in the machinery, or that they ever waived the same.

Boyer v. Neel.

The reply then set up certain other matters which were probably not necessary to be pleaded, because merely evidentiary in their nature, but which we will state, as they either were not controverted or were shown by undisputed evidence to be true. One of these matters was that the defendants failed to settle for the machinery when received by them, but that, several months after they had tested and tried the same, they executed to the said J. I. Case & Co. their note and chattel mortgage on the machinery, and continued to use the same from the time they purchased it, which was in June (this should have been stated July), 1887, until the summer of 1889; and that, after testing the machine, they paid a part of the purchase money, all of which facts the plaintiffs pleaded as an estoppel against the defendants. Another of these matters, thus pleaded in the reply, was that, on the —— day of October, 1887, the defendants executed to the said J. I. Case Threshing Machine Company their chattel mortgage on the machinery in question to secure the unpaid purchase money; that J. I. Case & Co. afterwards, in consequence of the default of the defendants in paying the unpaid purchase money, took possession by a writ of replevin of the machinery under the chattel mortgage, and caused the same to be sold for $260, and that, after deducting the costs and expenses of the sale, there was the sum of $175 to be credited on the note filed with the petition. The reply further pleaded the action of replevin and the judgment therein in bar of any right of recovery by the defendants by way of set-off or recoupment.

On these pleadings the cause went to trial before a jury, and the defendants had a verdict and judgment on so much of their answer as was in the nature of a plea in bar; and the plaintiffs had a verdict and judgment against the defendants on so much of the answer as

pleaded matters of counterclaim. From this judgment the plaintiffs prosecute the present appeal.

At the trial evidence was given, which showed without controversy that the separator and the traction engine were purchased by the defendants from the J. I. Case Threshing Machine Company—called indifferently in the pleadings as above seen, by its proper name and also by the name of J. I. Case & Co.,—by a written and printed order, signed by the plaintiffs, dated June 3, 1887. The J. I. Case Threshing Machine Company was a corporation doing business at Racine, Wisconsin, organized under the laws of that state. This order was the same referred to in the answer of the defendants, and it contained the conditional warranty which they set out in their answer, as above recited, *in hæc verba*, and also a further clause hereafter stated. The defendants gave evidence tending to show that the machine was delivered to them in Scotland county, Missouri, about the fifth of July, 1887; that they got to work with the machine and threshed with it during the fall season of that year, earning by so doing some $600 or $700, and threshing all the grain with it which they could get to thresh. They did not complain to the J. I. Case Threshing Machine Company, nor to these plaintiffs, after a trial of ten days, as required by the terms of the warranty, or during that season, that the engine would not satisfy the warranty. They did, however, on August 1, 1887, procure Mr. Moore, a merchant at Arbela, who attended to their correspondence for them, to write to these plaintiffs a letter containing the following request: "Mr. Neel [one of the defendants] tells me to send to you for one lubricator on steam chest. This is broke. Send this and grab claws. They want this cup at once for steam chest." More than two months after this, namely, on the fourth of October, 1887, the defendants, having

had full opportunity to test the engine, and having been using the engine and separator in threshing, as their own evidence tends to show, executed upon the same a chattel mortgagee to secure the unpaid purchase money. But their evidence tends to show that, when they executed the chattel mortgage, they complained to the plaintiffs of the defective character of the engine as described in their answer, and executed the mortgage on the faith of his promise to have the same repaired. About three months later than this, about the first or second of January, 1888, they paid a note for $200 of the purchase money secured by the chattel mortgage. The defendants' evidence tended to show that the engine was defective principally in the fact, that what was called a bracket was continually getting loose, so that it leaked steam and water; that it did not have the power which had been represented; that it would not travel on bad roads or surmount hills, but that it was necessary to hitch a pair of mules to it in such cases; that they complained to the plaintiffs, as above stated, in August, 1887, about a month after they had received the machine, and they sent a man to fix it; that the following year the defendants ran the machine over the side of a bridge, so that it received considerable damage, but their evidence tended to show that this did not injuriously affect it in the points wherein it was originally defective. Afterwards the J. I. Case Threshing Machine Company sent a man from Racine to overhaul the engine a second time. Plaintiffs' evidence tends to show that this was done to satisfy the defendants and induce them to pay up the purchase money, which was due, without further trouble. The defendants never paid anything on account of the purchase money after the payment of the $200 note, made about the first of January, 1888. Matters ran on until some

time in the year 1889, when the plaintiffs, having, it seems, succeeded to the rights of the J. I. Case Threshing Machine Company, took possession of the engine and machine under a writ of replevin, and sold the same as stated in their reply. The defendants continued to use the engine down to that time, and, during the winter of 1888 and 1889, they used it in sawing wood. The defendants made no complaint as to the separator, but only as to the engine.

The court submitted the case to the jury upon four instructions, which embodied the theory of law that, if the engine proved useless for the purpose for which it was purchased, provided the plaintiffs or the J. I. Case Threshing Machine Company were notified of that purpose, there could be no recovery upon the contracts in suit; and that the plaintiffs would not be entitled to recover, as the purchase price of the same, an amount beyond the actual value as shown by the evidence. On the other hand, the court refused the following instructions requested by the plaintiffs: "Under the contract of purchase of machinery, it was the duty of the defendants to notify both the J. I. Case Threshing Machine Company and the plaintiffs, after a ten days' trial of the machinery, of the defects wherein it failed to fill the warranty; and if the jury believe from the evidence that the defendants did not, immediately after a ten days' trial, so notify both Bowman & Boyer and the J. I. Case Threshing Machine Company, the verdict of the jury must be for the plaintiffs, notwithstanding the plaintiffs and J. I. Case & Co. afterwards repaired said machine."

"Although the jury may believe from the evidence that the machinery purchased by the defendants of J. I. Case & Co. was defective, and did not fill the conditions of the warranty introduced in evidence, yet, under the contract of purchase and warranty, it was

the duty of the defendants, after ten days' trial of said machinery to immediately give written notice to both J. I. Case & Co. and the plaintiffs, and stating wherein such machinery failed to satisfy the warranty; and, unless the jury believe from the evidence that they have done so, their verdict should be for the plaintiffs.''

But the court did give, at the request of the defendants, the following instruction: ''The court instructs the jury that, under the contract of purchase and warranty in this case, the jury will not be authorized, in passing upon the question as to whether such notice was waived or not, to take into consideration any of the acts or conduct of J. I. Case & Co., or of Bowman & Boyer, after the expiration of the ten days' trial of said machinery by defendants.''

In view of the giving of the last instruction, we find it somewhat difficult to conclude what was the theory of the learned judge who tried the case; but, it is perceived from this long recital of the pleadings, the evidence and the instructions, that the case was submitted to the jury upon that part of the defense set up in the answer, which pleaded that the engine was entirely worthless for the purposes for which it was purchased, of which purpose the vendor had knowledge at the time of the sale—ignoring for the most part the fact, that there was a special contract prescribing what should be done in such a case. If this case was properly tried, it would be utterly useless for the vendors of farm machinery to endeavor to protect themselves by clauses in contracts of sale, such as the one which the defendants have set up in their answer and which has been shown in evidence; because the defendant could plead at the same time that the machine had become entirely worthless for the purpose intended, which purpose was known to the vendor at the time of the contract of sale, and could thus step aside from the

terms of the actual contract and recover on a principle of law, which obtains where there has been no special contract other than a general contract of warranty. The decisions in this state, which allow this defense to be set up, allow it to be set up either where there is an implied warranty of the goodness of the thing sold, or where there is an express warranty of such goodness; but no decision allows it to be set up so as to do away with the terms of a special contract, which the parties to the sale have seen fit to make for their government in case the thing sold turns out to be defective or worthless.

The principle upon which the defendants predicate this defense, and upon which it has been submitted to the jury, has been laid down in this state in the following cases: *Brown v. Weldon*, 99 Mo. 564, affirming s. c., 27 Mo. App. 251; *Compton v. Parsons*, 76 Mo. 455; *Murphy v. Gay*, 37 Mo. 535; *Barr v. Baker*, 9 Mo. 840. In none of these cases was the principle applied so as to do away with the terms of a conditional warranty, whereby the vendee agreed, after a certain trial of the thing sold, to notify the vendor of its defectiveness, or to return the same, or otherwise. Nor could such an application be made of the principle in such a case as that before us, without going to the extreme of holding that the parties to a sale are not to be allowed to make their own contract, but that a rule of law can be opposed by the judges to a special contract which the parties have seen fit to make for themselves, which contract in no way contravenes any rule of law or of public policy.

We have been referred to the case of *Keystone Implement Co. v. Leonard*, 40 Mo. App. 478, as holding that, in actions for the purchase price of a machine, a defense of breach of warranty, and a defense that the machine was worthless for the purpose for which it was pur-

chased, are consistent defenses, which may be set up in the same answer. That was true in that case, and it would have been true in this case, if the defendants had pleaded a compliance with the terms of the special contract of warranty on their part, or a waiver of its terms on the part of the plaintiffs. In that case the two defenses which were pleaded were: *First.* That the machine was bought with a warranty, that it was the finest machine ever presented to the public, strongly and durably made, would do good work, etc., and that, if it did not do good work, as warranted, the plaintiff, on notice, would make it work properly; and it was pleaded that it failed to work, and that the defendant notified the plaintiff, and that the plaintiff failed to make it work properly, etc. *Second.* That the machine was bought for the purpose of cutting fodder, etc., and that for that purpose it was of no value, and that the defendant after ascertaining that fact offered to return it to the plaintiff. Here, at least, in the second defense was an offer to return the machine in compliance with the terms of the special contract of warranty pleaded in the first defense. Without saying whether we regard that case as well decided or not, it is sufficient for us to say that it does not govern the case before us, because it was neither pleaded nor proved in the case before us that the defendant ever offered to return the engine in compliance with the terms of the conditional warranty, which they set out in their answer.

They, moreover, failed to plead or to prove that, after a trial of ten days, they immediately gave written notice to the J. I. Case Threshing Machine Company and the agents of whom the machine had been purchased, stating that it failed to satisfy the warranty, as required by the terms of the warranty itself. But, in lieu of this, they attempted to plead and prove a subsequent waiver by the J. I. Case Threshing Machine

Company, and by these plaintiffs, of the giving of such notice. The facts upon which they predicate such waiver do not, as a conclusion of law, show any waiver at all of the warranty. Those facts are, that at periods of which no dates are given as stated in the answer, but of which, as shown by the evidence, the dates were long after the expiration of the ten days' trial provided for in the conditional warranty, the plaintiffs and the J. I. Case Threshing Machine Company promised to remedy certain defects in the machine. But the difficulty with holding that this is a waiver of the condition, that they were to have notice immediately after the ten days' trial, is found in the contract itself, which provides that such fact shall not constitute a waiver. So much of the contract, as so provides, is in the following language: "If the company shall, at the purchasers' request, render assistance of any kind in operating said machinery or any part thereof, or in remedying any defects, either before or after said ten days' trial, such assistance shall, in no case, be deemed a waiver of, or excuse for, any failure of the purchaser to fully keep and perform the conditions of this warranty." This part of the conditional clause of warranty in the contract of sale was not pleaded by the defendants in their answer; but, as they based their defense upon the contract, and as the rights of the parties were governed solely by the contract in the absence of explicit evidence of a waiver of its terms, they are bound by this clause of the contract as much as though they had pleaded it. It was not competent for them, in pleading this condition warranty, to select from the paragraph such parts as were favorable to them, and omit the rest. The whole contract was put in evidence by the plaintiffs; its terms are not in any way disputed, and the rights of the parties must be governed by it. It follows that, giving the fullest effect to the defendants' evi-

dence, they have not pleaded and proved any defense which is good in law, and that the court erred in submitting the case to the jury upon an erroneous theory of law, departing from and ignoring the terms of the express contract which the parties had made.

It thus appears indisputably that the plaintiffs were entitled to a judgment upon the notes or contract, which are the subject of the suit, according to their tenor, with the addition of $40 admitted to be a reasonable attorney's fee, under the terms of those contracts, but with the abatement of $175 admitted by the answer to have been realized, exclusive of charges and expenses, from the sale of the machinery under the chattel mortgage. In the abstract of the record before us, the notes are not set out, nor is the date of the sale under the chattel mortgage given; and we cannot, therefore, make the computations of interest necessary to the entering of judgment in this court, or to the directing of the exact judgment which should be entered in the circuit court; but we reverse the judgment, and remand the cause, with directions to the circuit court to cause the proper computations of interest to be made, and to enter judgment for the plaintiffs in conformity with the basis here laid down. It is so ordered. All the judges concur.