## BANK OF POLK, Appellant, v. W. B. WOOD, Respondent.

**Springfield Court of Appeals, March 12, 1915.**

1. **BILLS AND NOTES: Failure of Consideration: Burden Not on Holder to Prove Himself Holder in Due Course.** Under Secs. 10022, 10029, R. S. 1909, the failure of consideration for a note does not place the burden on the holder to prove himself a holder in due course. (Following Hill v. Dillon, 176 Mo. App. 192, 205.)

2. ————: **Holder in Due Course: Presumption.** Every holder of a note is prima facie a holder in due course and the burden of proving the contrary is on the opposing party, except where it be shown that the title of the person negotiating the note is defective. (Sec. 10029, R. S. 1909.)

3. ————: **Defective Title: Failure of Consideration.** Term "Defective Title" defined (sec. 10025, R. S. 1909,) and *held* not to include failure of consideration.

4. ————: **Holder for Value in Good Faith.** Plaintiff purchased a note the day after it was given. He knew that it was given in part payment for a horse also that a collateral agreement existed between the parties that the seller would exchange another horse for this one if it proved to be not a good producer. This would not affect the negotiability of the note or plaintiff's good faith in buying same, as the collateral agreement contemplated the payment of the note in any event.

5. ————: **Holder in Good Faith and for Value.** Where a stallion was sold under a warranty of soundness and as a good producer and the seller honestly so believed, the fact that the horse was afflicted with a latent disease or became diseased later and proved to be a nonproducer, would not constitute fraud or affect the good faith of one who purchased the note given in part payment for the horse.

6. **SALES: Written Warranty: Includes all Others: Basis of Action.** Where a stallion was sold under a written guaranty that he was a good producer, all negotiations and representations concerning this question and the implied warranty to the same effect were merged in the written warranty which furnishes the basis of defendant's right both as to breach of warranty and the measure of damages therefor.

7. **WARRANTY: Stallion: Good Producer: Meaning.** The warranty that a stallion is a good producer means that he is a

reasonably good producer and up to the fair average of such horses in that respect.

8.  **SALES: Warranty: Breach: Remedy Under Contract.**  Where purchaser's only remedy for breach of warranty that a stallion purchased was a good producer is to return the horse in question, or offer to do so, and demand another of like kind and value, in order to avail himself of such right he must prove a compliance on his part with the conditions imposed.

9.  **BILLS AND NOTES: Purchase of Horse: Breach of Warranty: Remedy: When Payment of Purchase Note Not to be Refused.**  A note was given as part payment for the purchase price of a horse, sold under a written guaranty as a good producer, the remedy for breach of such warranty being that he might be returned for another of like kind and value, upon demand of purchaser.  Where no such demand was made nor was there a refusal on the part of the seller to furnish another horse, the buyer could not refuse to pay the note.

10.  **INSTRUCTIONS: Concerning Fraud in Sale of Animal: When Not Warranted.**  The seller of a stallion was a horseman of considerable experience and knew the condition of the horse to the extent that same could be ascertained by an ordinary investigation.  He warranted the stallion to be a good producer.  The horse was afflicted with an incipient or latent disease which later caused its death and which seemed to be the probable cause of the horse not being a good producer as warranted.  The seller was not aware of the presence of the disease.  An instruction was not warranted which predicated fraud on the fact that the seller represented the horse to be a good producer when in truth he had no knowledge whatever thereof.

11.  **SALES: Fraudulent Representations: Absence of Knowledge: What Constitutes Fraud.**  Absence of knowledge which renders a representation fraudulent, does not cover a case where the party making the representation has such information as comes from a fair investigation and the exercise of his own faculties by one having a fair knowledge of the subject.

Appeal from Dallas County Circuit Court.—*Hon. C. H. Skinker*, Judge.

REVERSED AND REMANDED.

*D. M. Rush* for appellant.

(1)  In a suit upon a negotiable note by an assignee, who purchased before maturity, and the de-

fendant interposes the defense of failure of consideration, the burden is on the defendant to show that plaintiff purchased with notice. Hill v. Dillon, 176 Mo. App. 192. (2) There being a written guarantee in this case coupled with a contract signed by both parties providing that in case that the horse did not prove to be a good producer, another horse should be furnished, this contract fixed the rights of the parties in relation to that question, and takes from the purchaser the right to rely upon a representation that the horse was a good producer as an element of fraud. Boyer v. Neel, 50 Mo. App. 26; Wood Machine Co. v. Babbst, 56 Mo. App. 127; Kingland & Douglas, Mfg. Co. v. Board Bros., 60 Mo. App. 662; Kirk and Co. v. Sealy, 63 Mo. App. 262; Nichols Shepherd and Co. v. Rhoodman, 112 Mo. App. 229; Gower Scott & Co. v. Nelson, 166 Mo. App. 229; Gower Scott & Co. v. Nelson, 166 Mo. App. 51, 66; Beems v. Limerick, 165 S. W. 1166; Nichols and Shepherd & Co. v. Larkin, 79 Mo. 264. Hence instruction number 3 was erroneous. (3) To convict a person of fraud based upon a statement made without actual knowledge of its truth or falsity, the statement relied on must be of such a character, that by a fair and reasonable investigation approximately accurate information could be secured as to its truth, and in this case the statement that the horse was sound could not be taken to mean more than that he was sound so far as the seller could by fair and reasonable investigation ascertain the facts. 20 Cyc. 17, 25, 26, 27, 29 and 30; Tucker v. White, 125 Mass. 344; Brown v. South Joplin Lead & Zinc Co., 194 Mo. 681. (4) Even though the seller of the horse may have been under his agreement bound to furnish another horse after the death of the horse sold, yet he was not required to do so until requested so to do by defendant, there being no evidence that the defendant requested the seller to furnish another horse after the death of the one sold. Instruction number 2 was erroneous. Pal-

mer v. Reavs Co., 139 Mo. App. 473. See cases cited under point 2.

*J. S. Haymes* for respondent.

(1) Absent a holder in due course, if the note sued upon was obtained by fraud, or was without consideration, defendant's answer, pleading them set up a perfect defense thereto. Catterlin v. Lusk, 98 Mo. App. 186; Williams v. Baker, 100 Mo. App. 288; Link v. Jackson, 164 Mo. App. 195; Bank v. Dowler, 163 Mo. App. 65; Machine Co. v. Gasperson, 168 Mo. App. 558. (2) Instruction number 3, which told the jury that representations by the seller of the horse, which were known by him to be untrue, or which were made by him of his own knowledge, when in truth he had no knowledge on the subject, constituted fraud, properly declared the law. Hamlin v. Abell, 120 Mo. 188. (3) Failure of consideration may be based upon the breach of both an express and what amounts to an impiled warranty, if pleaded as was done in this case. Keystone Co. v. Leonard, 40 Mo. App. 477; Boyer v. Neel, 50 Mo. App. 36; Boulware v. Manufacturing Co., 152 Mo. App. 576; Machine Co. v. Gasperson, 168 Mo. App. 571.

STURGIS, J.—This is a suit by plaintiff as owner of a promissory note payable to one Foote, given in part payment of a certain stallion. The defendant is the purchaser of the horse and maker of the note. The defense is failure of consideration and that the note was obtained by misrepresentations amounting to fraud. In reply the plaintiff asserts that it purchased the note for value and in good faith before maturity and without any knowledge of any fraud in its procurement or failure of consideration. The fraudulent representations relied on are that the horse was sound

189MA5

and a sure producer, which were untrue, and that the payee in the note in selling the horse knew such representations to be false or made same without any knowledge on the subject. The fact of the horse being unsound and not a producer also constitutes the failure of consideration.

The evidence shows that in selling the horse the following written warranty, dated March 25, 1912, was given and accepted: "I hereby guarantee the above-named horse to be a producer, provided he shall have plenty of exercise and proper feeding and grooming, care and handling; and in case he should not so prove we agree to replace him with another of the same breed and price, upon the delivery to us of the above-named horse in as good and sound condition as he is at present; and the purchaser of said horse hereby agrees to accept said second horse so furnished in full satisfaction of any claim for damages on account of said warranty. This guarantee expires January 1, 1914." The evidence tends strongly to show that the horse in question was not a good producer. It also shows that the horse died in about seven months after the sale of Bright's disease—a disease affecting the kidneys. Symptoms which veterinaries attributed to this disease began to develop soon after the sale of the horse. The real nature of the animal's ailments was not known to the defendant, and perhaps to no one, until the *post mortem* examination.

The evidence tends to show that the plaintiff purchased this note the next day after it was given, paying full value therefor. The note was endorsed to it without recourse.

Assuming that there was evidence tending to show a failure of consideration, we find that the court instructed the jury that, such fact being found, it then devolved on plaintiff to prove by the greater weight of the evidence that it had no knowledge of such want of consideration at the time of purchasing the note.

It is conceded by learned counsel for defendant that this instruction, placing the burden of proof in case of failure of consideration on the holder of the note to show his innocence, is in conflict with the ruling of this court in the case of Hill v. Dillon, 176 Mo. App. 192, 205, 161 S. W. 881. Defendant challenges the correctness of that ruling, but a reconsideration of same leads us to affirm it. The conclusion reached in that case, that section 10029, Revised Statutes 1909, of the Negotiable Instrument Act, did not place the burden of proof on the holder of a note to prove himself a holder in due course, as defined by section 10022, in case of proof of failure of consideration, was based on the provisions of the Negotiable Instrument Act itself as well as the decisions in other States. Section 10029, supra, makes every holder of a note prima facie a holder in due course and casts the burden of proving to the contrary on the other party, except in case it be shown that the *title* of the person negotiating it is *defective*. Defective title is defined by section 10025 to include obtaining "the instrument, or any signature thereto, by fraud, duress or force and fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith, or under such circumstances as amount to a fraud." All these terms have been defined by the courts, if, indeed, their plain import need any defining, and are held not to include a failure of consideration, as shown by the citations in Hill v. Dillon, supra. Defendant insists that the term "negotiates it . . . under such circumstances as amount to a fraud" is broad enough to require no other proof than the negotiation of a note the consideration of which has failed. No case is cited as so holding. Defendant's reasoning is that so long as the payee holds a note given without consideration the maker can set up such defense, but if the payee negotiates it so as to cut off the defense it "amounts to a fraud" on the maker by depriving him of such defense. Such

reasoning, however, would apply to any and all defenses cut off by negotiating the instrument and would cast the burden on the holder in all cases. To hold that a negotiation of a note amounts to a fraud because it has the effect of cutting off a defense is in effect holding that the holder is never prima facie an innocent purchaser without notice, while section 10029, supra, says that such holder is attended with such presumption in all cases except where defective title is shown. To so hold makes the exception coextensive with the rule and thereby destroys it.

We have examined the cases cited by defendant as sustaining the rule that the burden of proof is shifted to the holder of a note on proof of failure of consideration the same as on proof of fraud but do not find them so holding, unless it be the case of Pierson v. Huntington (Vt.), 74 Atl. 88, which seems to have been decided without any reference to the Negotiable Instrument Law and follows old cases of that State. The case of Gottstein v. Simmons (Wash.) 109 Pac. 596, is a case involving fraud, though the fraud caused a failure of consideration. That case cites Ireland v. Scharpenberg, (Wash.), 103 Pac. 801, where the court, speaking of this section of the Negotiable Instrument law fixing the burden of proof, said: "This is but a statement of the general rule fixing the burden of proof, and which has special force when applied to a case where *fraud* is involved in the procuring of the note." The case of Alexander & Co. v. Hazelrigg, (Ky.), 97 S. W. 353, involves an illegal consideration declared by statute to make the note void.

In Jobes v. Wilson, 140 Mo. App. l. c. 291, 124 S. W. 548, which is the first case by this court holding that the statute in question changed the rule as to the burden of proof, it is conceded that unless the statute has worked such change the rule in this State is that: "In the first case, when the defendant showed that the note was obtained by fraud, the burden of evidence was

then on the holder to show that he acqiured it in due course, but when the failure of consideration merely was proven, the burden of evidence did not shift, but remained with the defendant to show that the plaintiff was not a holder in due course.'' We, therefore, adhere to our ruling in Hill v. Dillon, supra, that the ruling of this court in the Jobes case, supra, and those following it, holding that section 10029 made a change in this respect is erroneous.

On this question of failure of consideration, the plaintiff's evidence is that it bought the note the day after it was given and knew that it was given in part payment of a horse. The fact that plaintiff may also have known of the collateral agreement between the parties, that the seller would exchange another horse for this one if it proved not to be a producer, would not affect the negotiability of the note nor militate against plaintiff's good faith in buying the same, as such collateral agreement contemplates the payment of the note in any event. If the seller had reason to believe that the horse was not sound, or would prove to be a nonproducer and did not intend to carry out his collateral warranty to exchange another horse therefor, and the plaintiff bought the note with knowledge of such design, that would make a case of fraud. However, the seller's subsequent willingness to make the exchange negatives any such intention. If the seller was honest in his belief of the soundness of the horse at the time of selling the note and intended to comply with his warranty, the fact that the horse was in fact afflicted with a latent disease, or became diseased afterwards, or proved to be a nonproducer, would not constitute fraud or affect plaintiff's good faith in buying such note. [Hahn v. Bradley, 92 Mo. App. l. c. 403.]

We must also uphold plaintiff's contention that, as there was a written warranty with conditions precedent given by the seller and accepted by the buyer covering the question of the horse being a good breeder

—the purpose for which the animal was bought and sold—all negotiations and representations in that respect, as well as the implied warranty to the same effect, were merged in the written warranty and such writing furnishes the basis of defendant's rights both as to the breach of the warranty and the measure of damages therefor. [Machine Co. v. Gasperson, 168 Mo. App. l. c. 571, 153 S. W. 1069; Boyer v. Neel, 50 Mo. App. 26, 35; Wood Machine Co. v. Bobbst, 56 Mo. App. 427; Brooks Tire Co. v. Wells, 182 Mo. App. 50, 167 S. W. 604.]

The written warranty in this case provides that if the horse in question proved not to be a producer with proper care and handling the seller would replace him with another of like breed and price provided the purchaser returned the first horse in as good condition as when sold. The warranty that he is a producer means that he is a reasonably good producer and up to the fair average of such horses in that respect. Instruction numbered three, as given, blends some of the elements of an implied warranty with the express warranty different from the written one. This should be avoided.

The defendant's only remedy for a breach of the warranty was to return the horse in question, or offer to do so, and demand another of like kind and value. He could demand nothing else. To avail himself of this right he must prove a compliance on his part with the conditions imposed. [Bank v. Barts, 130 Mo. App. 635, 638, 109 S. W. 1057; Nichols-Shepard Co. v. Rhoadman, 112 Mo. App. 299, 87 S. W. 62; Gaar-Scott & Co. v. Nelson, 166 Mo. App. l. c. 66, 148 S. W. 417.] The evidence here shows that the seller of the horse, on being notified that the horse in question was not proving to be a good producer, agreed to furnish another horse in exchange and the parties arranged to do so and were only prevented from so doing by the sickness and death of defendant's horse. We agree that

if this horse died from a disease with which he was afflicted at the time he was sold to defendant without fault on defendant's part, then the death of the animal would excuse defendant from returning the horse; but, he could only demand another horse of like kind and price, and in the absence of a refusal to so furnish another horse he could not refuse payment of this note. We find no evidence in the record of such refusal.

The evidence tends to show that the disease causing the horse's death was closely connected with and the probable cause of the horse not being a producer. If the seller of the horse knew that he was not sound, but was afflicted with some incipient or latent disease, and concealed such fact from the defendant and sold the note to plaintiff before the horse's condition could be discovered, such facts would amount to fraud in the procurement of the note. We do not think, however, that the facts of this case warranted an instruction predicating fraud on the fact of the seller having represented the horse to be sound "when in truth he had no knowledge whatever on the subject." The seller was a horseman in the sense of having handled and cared for many horses for several years past, and he had seen and handled this horse and knew his condition to the extent that same could be ascertained by an ordinary investigation. If his diseased condition was so latent that it did not reveal itself under such conditions and the seller's representation of soundness was honestly made with the knowledge he had of the horse and the horse was in fact sound so far as the seller could by reasonable and fair investigation ascertain the fact, then absence of deeper knowledge as to the horse's condition did not constitute fraud. Absence of knowledge which renders a representation fraudulent does not cover a case where the party making the representation has such information as comes from a fair investigation and the exercise of his own faculties by one having a fair knowledge of the subject. [Peters v.

Lohman, 171 Mo. App. 465, 486, 156 S. W. 783; Lovelace v. Suter, 93 Mo. App. 429, 440, 67 S. W. 737; Bank v. Hutton, 224 Mo. 42, 67, 123 S. W. 47; Brown v. So. Joplin Lead & Zinc Min. Co., 194 Mo. 681, 92 S. W. 699; Miller v. Rankin, 136 Mo. App. 426, 117 S. W. 641; 20 Cyc. 22-27.] Instruction numbered three is erroneous for the above reasons.

For the reasons above mentioned the cause will be reversed and remanded.

- *Robertson, P. J.,* and *Farrington, J.,* concur.