C. J. WELLS, et al., Respndent, v. JOHN WELCH, Appellant.

Springfield Court of Appeals, August 10, 1920.

1. **SALES: No Implied Warranty That Hogs Intended for Food are Free from Disease.** In a sale of hogs, though it is known that they are ultimately intended for human food, there is no implied warranty that they are free from disease which would render them unfit for food.

2. ——: **Opinion that Infected Hog is Healthy, Not Fraud in Absence of Knowledge or Negligence.** The expression of an opinion by the seller of hogs that they are sound and healthy is not fraud

which vitiates the sale, though they were infected with hog cholera, in the absence of knowledge of that fact by the seller or negligence in ascertaining the truth.

3. ————: Expressed Opinion Hogs Sold Were All Right Not ''Warranty'' as a Matter of Law. A "warranty" is a contract whereby the warrantor agrees to make good the loss in respect to the matter warranted, and, like all contracts, requires a meeting of the minds, so that it was error to instruct that, if the seller before delivery stated that the hogs sold were all right, when in fact they were infected with disease, they should find for the buyer: for whether the statement was intended as a warranty was for the jury.

4. ACTION: Statute Forbidding Sale of Infected Hogs May be Basis of Civil Action. Laws 1917, page 133, making it unlawful to sell swine with hog cholera, though a criminal statute, may be made the basis of a civil action for damages.

5. SALES: Statute Forbidding Sale of Infected Hogs not Applicable in Absence of Knowledge or Negligence. Laws 1917, page 133, making it unlawful to sell any swine infected with hog cholera, does not apply to a sale of hogs infected in fact, if the seller had no knowledge of that fact, and he was not negligent.

6. ————: Seller Cannot Claim Ignorance of Disease of Hogs Which Reasonable Care Would Disclose. A seller of hogs cannot escape liability under Laws 1917, page 133, if the hogs were infected with cholera, on plea of ignorance of that fact, if reasonable care and caution on his part would have disclosed the fact.

7. APPEAL AND ERROR: Appellate Court cannot Find Fact Supported by Evidence, which Instruction Erroneously Stated was Unnecessary to Verdict. Where the trial court erroneously instructed that plaintiff could recover the money paid for hogs infected with cholera from the seller, without requiring a finding of knowledge or negligence by the seller, the appellate court cannot affirm the judgment, though there was evidence to support a finding of knowledge, or means of knowledge, of the disease.

Appeal from Dent Circuit Court.—*Hon. L. B. Woodside,* Judge.

REVERSED AND REMANDED.

*Clyde C. Cope, J. J. Cope, L. T. McGee, E. W. Bennett* and *J. M. Stephens* for appellant.

*Wm. P. Elmer*  for respondent.

STURGIS, P. J.—Plaintiffs sued to recover back' the purchase price paid to defendant for twenty-two head of hogs, purchased from defendant, on the alleged ground that said hogs were diseased at the time of such sale. Plaintiffs alleged that defendant "represented and stated" that these hogs were sound and healthy and that plaintiffs relied thereon in purchasing same and had no knowledge to the contrary; that said hogs were in fact diseased and infected with hog cholera from which they soon died and that the defendant knew at the time of such sale that said hogs were infected with hog cholera or some other fatal disease.

On appeal to the circuit court the plaintiffs tried the case and it was submitted on their behalf on the theories (1) of an implied warranty of soundness, (2) an express warranty of soundness, and (3) that defendant was liable *ipso facto* for selling diseased hogs. The defendant was a stock dealer and had himself purchased these hogs shortly before selling them to plaintiffs. He and the persons from whom he purchased swear that the hogs were healthy and sound and there was nothing indicating hog cholera or other disease. The hogs, however, became sick and commenced dying within thirty-six hours after plaintiffs purchased them. All of them died within a month and the evidence justifies a finding that they died of hog cholera.

Plaintiffs testified that they paid the market price for the hogs and while they were then young hogs they were buying them to fatten in the fall to be used partly for their own meat and the rest be sold for food. Plaintiffs' first instruction is on the theory of implied warranty and told the jury that if defendant sold these hogs to plaintiffs knowing that plaintiffs intended to use them for human food then defendant impliedly warranted them to be fit for that purpose and if said hogs were at that time infected with cholera or other contagious disease from which they died then to find

for plaintiffs. If this instruction is the law there is an implied warranty of soundness in every sale of hogs for very few hogs are sold to be used for any ultimate purpose other than food and their fitness for any purpose we can imagine would be equally destroyed by their being infected with cholera or other fatal disease. The instruction is erroneous. There is no implied warranty of soundness and freedom from disease in the sale of hogs. It was so held in a hog cholera case, Galbreath v. Carnes, 91 Mo. App. 512, when the court said that "ordinarily, in the sale of personal property, the rule of *caveat emptor* applies," and there held that the plaintiff to recover must prove an express warranty. Such is the rule in the sale of domestic animals generally. [Anthony v. Potts, 63 Mo. App. 517; Matlock v. Meyers, 64 Mo. 531; Lindsay v. Davis, 30 Mo. 406.] In the Lindsay case, supra, the court held that "there must be a warranty or fraud to make the vendor of a horse with a secret malady responsible to the purchaser; the purchaser takes the risk of quality and condition, unless he protects himself by a warranty, or there has been fraud on the part of the vendor." It amounts to actionable fraud if the vendor of hogs or other such property knows or has reasonable cause to suspect that they are afflicted with a latent disease likely to impair or destroy their value, and conceals such fact or his knowledge in relation thereto; but there is no actionable fraud even though such animal has a latent disease of which the vendor is non-negligently ignorant, merely because he expresses his belief that such animal is healthy and sound. [Bank of Polk v. Wood, 189 Mo. App. 62, 71, 173 S. W. 1093.]

Plaintiffs' second instruction is also erroneous. It told the jury that if, at or prior to the delivery of the hogs to plaintiffs, defendant told plaintiff that said hogs were all right and in good condition, to find for plaintiff if such hogs were in fact infected with disease. The evidence is that while plaintiffs and defendants were separating the hogs bought and selected by plaintiffs

from a large lot of hogs, one of the plaintiffs noticed and called defendant's attention to the fact that one hog in the bunch did not look all right and that defendant then said that hog or those hogs were all right. It will be noticed that the instruction in effect declares that this expression amounted to an express warranty as a matter of law. This expression may have been evidence of a warranty or it may have been a mere expression of the opinion of the vendor. Such is the holding of the cases heretofore cited. A warranty is a contract whereby the warrantor agrees to suffer or make good the loss in respect to the matter warranted. As in all contracts there must be a meeting of the minds and the intention of both the warrantor and warrantee is of first importance. A mere expression of opinion as to quality or soundness of an article, however positive, does not amount to a warranty unless it amounts to an agreement to make good the loss. In Ransberger v. Ing, 55 Mo. App. 621, 624, this is said: "In the first place the court is not justified in declaring that a mere assertion of quality or condition of a chattel at the time of sale is, as matter of law, warranty. It may be regarded as evidence tending to establish a warranty, but can hardly be denominated such as matter of law. The question is, as in other cases of contract, what was the *intention* of the parties. 'This intention is a question of fact for the jury, to be inferred from the nature of the sale and the circumstances of the particular case. [Benjamin on Sales, sec. 613.]" In Matlock v. Meyers, 64 Mo. 531, the court held that an allegation in the petition that the vendor "represented" an animal to be sound did not allege a warranty nor does the allegation here that defendant "represented and stated" these animals to be healthy allege a warranty. A representation or statement of the vendor that an article is sound and free from a certain defect may be merely an expression of an opinion and far short of an agreement to make good the loss in case such article proves unsound and defective.

It is now urged that these errors are harmless on the theory that our statute, Laws 1917, page 133, makes every vendor of hogs an absolute warrantor against hog cholera or any other disease, latent or otherwise, affecting the animals sold. We concede that this statute though criminal may be the basis of a civil action for damages. That statute among other things makes it "unlawful for any person to sell or offer to sell any swine in this State which is infected with hog cholera or any other disease." By its third instruction the court told the jury that all the plaintiffs needed to prove to recover was that these hogs were infected with cholera or other fatal disease at the time of the sale. Under this instruction, and such is plaintiff's contention here, the vendor of hogs is made liable if such hogs subsequently prove to have had a disease, however incipient or latent, at the time and regardless of the vendor's knowledge or means of knowledge of such disease and regardless of his good faith and exercise of care in avoiding the sale of diseased hogs. This we think is a too drastic construction of the statute. For instance the same statute makes it a misdemeanor to drive on foot or haul in a conveyance any such infected swine along a public highway. The plaintiffs did this very thing with these hogs in taking them home and should they be indicted for violating this statute they would be surprised to know that their ignorance of the hogs being diseased, which they established in this case, would be unavailing as a defense to the criminal charge. Also by another section of the same act, it is made a misdemeanor for the owner of diseased hogs to fail to give immediate notice to owners of adjoining premises of such fact. Suppose the disease is incipient only and so latent that the owner by due care does not know of the infection, is he nevertheless guilty of failing to notify another of that of which he is excusably ignorant? It is true that prior statutes somewhat similar, sections 4864 and 4868, used the word "knowingly" or "wilfully" in describing the offense, but such does

not prove that the element of knowledge and intent is not necessarily implied here. Sections 4865 and 4866, Revised Statutes 1909 are of the same general nature and omit any such word yet the forms for indictment given in Kelly's Criminal Law, sec. 997, contain these words. When the doing of a particular act is prohibited it is not necessary to prove that the person so doing the act intended to harm or damage another or even that such act was likely to cause harm or damage, but that is different than proving that the person charged did not know that he was committing the prohibited act. The case of Wilson v. Railroad, 60 Mo. 184, is cited as holding that lack of knowledge of the hogs being diseased has nothing to do with the liability under this statute. In that case the defendant was held liable for transporting in this State Mexican and Texas cattle under a statute prohibiting Texas, Mexican or Indian cattle from being transported in this State. The court there said: "There is no question of caution or negligence on the part of the defendant involved in this case. Nor is it material whether the damages were the direct or remote consequence of the illegal act of the defendant, provided the facts bring the cause within the provisions of the statute. The greatest amount of caution and care on the part of the defendant while transporting the cattle could do the plaintiff no good. The statute has made it unlawful to convey Texas cattle into any county in this State between certain periods of each year, and the same statute fixes the consequences of its violation." It will be noted that what is there said in reference to lack of knowledge or using due care has reference to the manner of doing the forbidden act and results of same and not to the prohibited act itself. It is by no means there held that if the defendant did not know or have means of knowing that the cattle it transported were Texas or Mexican cattle it would nevertheless be liable. In fact in the statement of the case at page 187 the court says the defendant did know on what train and road the cattle came to Kansas City

and thereby knew or could have known that they came from Texas or Mexico. The case of Bradford v. Railroad, 64 Mo. App. 475, is less nearly in point than the Wilson case.

We are not holding that a vendor of hogs can recklessly shut his eyes to conditions and symptoms which if investigated would disclose that his hogs are infected or likely to be so or that he can be indifferent or careless as to their being diseased and thus hide behind the shield of ignorance. . A vendor cannot claim ignorance when reasonable care and caution would disclose the truth. The facts are, we think, sufficient to support a finding of knowledge or the means of knowledge as to these hogs being diseased, but the triers of the fact must make such finding before plaintiffs can recover. It results that the cause is reversed and remanded.

*Farrington* and *Bradley, JJ.,* concur.