**JACKSON et al. v. GIFFORD.**
No. 35655.

Supreme Court of Oklahoma.

Nov. 3, 1953.

Rehearing Denied Dec. 15, 1953.

Hamilton & Kane, Pawhuska, for plaintiffs in error.

Richard K. Harris and A. O. Harrison, Bartlesville, for defendant in error.

WILLIAMS, Justice.

Parties are referred to herein as in the trial court.

Plaintiffs Jackson and Ray are the owners of a place of business where auction sales are conducted, known as the Pawhuska Auction. They sued defendant Gifford to recover $825.74, the amount of a check given by defendant after purchasing some hogs at the auction sale; defendant stopped payment on the check before it cleared the bank.

Defendant's answer alleged failure of consideration in that within a few days after the sale, all of the hogs except 4 had died. It further alleged that there was an express warranty as to the health of the hogs; that such warranty was relied upon by the defendant; that it was in fact false for the reason that the hogs had been exposed to hog cholera; that the sale of such hogs by plaintiff was a violation of 2 O.S. 1951 § 242. On a cross-petition, defendant re-affirmed the above allegations and prayed for damages for money spent for serums and medicines for the hogs, for feed, and for contamination of the pens in which defendant kept his hogs after the purchase.

The jury returned a verdict against plaintiffs on their petition and for defendant on his cross-petition and awarded him damages in the amount spent for serums and medicines. Plaintiffs have appealed, setting out in their brief 10 specifications of error and 8 propositions of law. These are argued by plaintiffs in groups under 8 headings, and we will so consider them here.

It is to be noted that defendant seeks judgment upon his cross-petition upon either or both of two theories: express warranty and violation of statute.

Plaintiffs' first proposition or group of propositions concerns alleged error of the trial court in overruling plaintiffs' demurrers to defendant's evidence and motions for directed verdict. The line of argument followed is that the evidence did not show a warranty by plaintiffs as to the health of the hogs.

In this connection, the record shows that the auctioneer said at the beginning of the sale, "We have a veterinarian, if he finds a hog that is sick we do not sell him, we do not sell sick hogs". There was also evidence that he said "Boys, we have a veterinarian here at all times to examine these hogs and the stock we sell here and you get is sound because we have the veterinarian here all the time to examine this stuff and these hogs, and we don't sell stuff that is not all right, and we keep this veterinarian here to examine the hogs and the stock". It was shown that plaintiff Ray, one of the owners of the business, was present when these statements were made. Such evidence was, of course, contradicted by plaintiffs, but it is competent evidence reasonably tending to support the allegation that an express warranty was made, and the demurrers and motions for directed verdict therefore were properly overruled. See Myers v. Chamness, 114 Okl. 220, 245 P. 879, wherein the court said:

"The same rules obtain in the direction of a verdict as obtain on a demurrer to the evidence."

See also Hassell v. Hassell, 185 Okl. 154, 90 P.2d 885, wherein the following is found:

"The test applied to a demurrer to evidence is that all the facts which the evidence in the slightest degree tends to prove and all inferences or conclusions which may be reasonably and logically drawn from the evidence are admitted, and the court must treat the evidence as withdrawn which is most favorable to the demurrant."

Because of the similarity of plaintiffs' fifth proposition to their first one we consider it next. Therein plaintiffs argue that the court erred in giving to the jury instruction number 7, which reads in part as follows:

"The defendant partly relies upon the testimony that the auctioneer selling the animals to the defendant stated that said hogs were not diseased. This representation by the auctioneer would

not be binding upon the plaintiffs in view of the fact that notices had told the defendant that no warranty of quality of merchandise sold was made by the plaintiffs, unless, you should find by preponderance of the evidence, that the statements made by the auctioneer at the time and before the sale of the hogs in question, and that the plaintiffs heard such statements by the auctioneer and did not object thereto, offer any correction or deny that such statements by the auctioneer was true."

■ In support of this contention, plaintiffs argue again that the evidence in the case at hand does not show that a warranty was made by the auctioneer; however, we have already quoted the unequivocal statement of the auctioneer that "we do not sell sick hogs". Plaintiffs further say that warranty is a matter of intention, and in support thereof cite Wat Henry Pontiac Co. v. Bradley, 202 Okl. 82, 210 P.2d 348, the applicable syllabus of which is as follows:

"Warranty is a matter of intention. A decisive test is whether the vendor assumes to assert a fact of which the buyer is ignorant, or merely states an opinion, or his judgment, upon a matter of which vendor has no special knowledge, and on which the buyer may also be expected to have an opinion and to exercise his judgment. In the former case there is a warranty; in the latter there is not."

■■ The warranty in the case at hand meets the requirements of the above statement of the law. The auctioneer made a definite, unqualified statement of fact; he did not merely express an opinion. The case last referred to further defines a warranty as follows:

"To constitute an express warranty no particular form of words is necessary, and any affirmation of the quality or condition of the vehicle, not uttered as a matter of opinion or belief, made by the seller at the time of sale for the purpose of assuring the buyer of the truth of the fact and inducing such buyer to make the purchase, if so received and relied on by the buyer, is an express warranty."

We hold that the statement of the auctioneer in the case at hand was, by the terms of the above definition, an express warranty.

■ The second argument advanced by plaintiffs is that there was a definite and positive written contract between the parties hereto; that such contract by its terms stated that there was no guarantee against sickness; that the trial court therefore erred in permitting oral testimony concerning the auctioneer's alleged warranty, such testimony being an attempt to vary the terms of a written contract by oral testimony.

The alleged written contract referred to was an instrument called an invoice or "load-out sheet", signed by defendant, and containing the printed words "no guarantee against sickness". The record shows, however, that such instrument was not presented to defendant till he started to take the hogs away from the sale sometime after the sale had been completed. See 7 C.J.S., Auctions and Auctioneers, § 8, at page 1260, wherein is stated in part:

"Under a sale without conditions, the rule is that the title passes to the bidder when the property is knocked down to him."

In the case at hand, then, the oral sale contract was complete and binding when the fall of the auctioneer's hammer indicated his acceptance of the defendant's bid. Since the invoice or load-out sheet was not presented till sometime thereafter, it constituted no part of the contract of sale, defendant was not bound by its terms, and the trial court did not err in allowing oral testimony of the auctioneer's warranty.

■ It is next argued that the trial court erred in refusing to give the following instruction requested by plaintiffs:

"You are further instructed that unless you find by a preponderance of the evidence that the plaintiff specifically and expressly guaranteed that the

hogs which the defendant purchased were free from disease, *and that the plaintiffs at the time they made any such express warranty knew that the hogs were afflicted with disease, there was no warranty*. And in that event the defense with reference to warranty and the sickness of the hogs fails. In that event the plaintiffs are entitled to judgment as prayed in their petition." (Emphasis supplied.)

The error of such instruction is apparent on its face. It amounted to a statement to the jury that plaintiffs herein could not make a valid express warranty unless they knew in advance that same was false and fraudulent. This instruction was properly refused by the trial court. Guilty knowledge is not an element necessary to recovery for a breach of an express warranty. See, concerning express warranty, quotation from Wat Henry Pontiac Co. v. Bradley, supra.

■ Plaintiffs next argue that the court erred in giving three instructions to the jury which were based upon 2 O.S.1951 § 242. This section of the statute prohibits the sale or exchange of any swine that have been exposed to infection from hog cholera or swine plague within 21 days after all signs of the disease have disappeared. Plaintiffs say that such statute was not intended to render unlawful a sale of hogs at a public auction in the usual course of business, and that it was not intended to render unenforceable a sale contract made pursuant to such a sale.

With this contention we cannot agree. The applicable portion of such statute, 2 O.S.1951 § 242, reads in part as follows:

"No person, firm or corporation shall sell, barter, exchange or give away swine that have been exposed to infection from hog cholera or swine plague within twenty-one days after all signs of the disease have disappeared * *."

Section 246 of the same act provides for punishment consisting of a fine or jail sentence or both, for a violation of its terms. Section 242 is therefore a penal statute. While we have found no case directly in point construing this particular section of the statute, the following is directly analogous to the situation at hand:

"52 O.S.1951 § 296 is a penal statute and a violation thereof resulting in an injury to another constitutes actionable negligence." Texas Co. v. Belvin, 207 Okl. 549, 251 P.2d 804, 805.

■ We think the legislature had in mind inhibiting all reprehensible sales by any person, by public auction as well as by private transaction. Plaintiffs cite Miami Packing Co. v. Davis, 168 Okl. 468, 33 P.2d 621. However, that case is not authority for plaintiffs' position; it was merely a case in which a judgment for plaintiff in a suit for damages brought pursuant to this section of the statute was reversed because of insufficiency of the evidence to show either that the hogs were infected with cholera when plaintiff purchased them or, if so infected, that defendant knew about it. Plaintiffs also cite Wells v. Welch, 205 Mo.App. 136, 224 S.W. 120, a case in which plaintiff sued for damages pursuant to a Missouri statute substantially similar to the Oklahoma statute under consideration. The instructions complained of in that case had the effect of telling the jury that the seller of hogs that had been exposed to infection was liable regardless of whether or not he knew of such exposure. Such is not true here, for the reason that the instructions complained of in the case at hand contained a proviso that the jury must find that the plaintiffs "knew, or from an inspection of the swine in question, should have known" that the hogs had been exposed or were infected, before a finding for defendant would be justified. Plaintiffs in the case at hand admit that such proviso is present in one of the instructions, but contend that it is not included in instruction 8; however, instruction 8 contains the proviso that "Should you find by preponderance of the evidence that the plaintiffs sold said hogs *in violation of the statute as in these instructions outlined to you*" (emphasis supplied) plaintiffs could not recover on their petition and would be liable on defendant's cross-petition. Said statute was "outlined" in instruction 6, which included the proviso that the jury must find that plaintiffs "knew, or from an

inspection of the swine in question, should have known" of the hogs' exposure to disease before plaintiffs could be held liable.

■ Plaintiffs also argue that there was no evidence justifying a jury finding that plaintiffs knew or should have known of the exposure. In this connection, we note that there was testimony that immediately after the sale, a veterinarian employed by plaintiffs came to defendant and told him "You had better vaccinate those hogs, they are going to get sick". This was at least circumstantial evidence from which the jury might have inferred that plaintiffs knew about the condition of the hogs before the sale.

We wish to point out, however, that defendant having otherwise discharged the burden of proof resting upon him, either one of the following findings would have justified the jury's verdict for defendant: (1) that there was an express warranty, which warranty was relied upon by defendant, and was false; (2) that plaintiffs sold the hogs in violation of the cited statute, knowing that they had been exposed to cholera. If the jury's verdict is based upon the first finding next above, the question of whether plaintiffs knew of the condition of the hogs before the sale is immaterial.

■ Plaintiffs' sixth argument is that the court erred in giving the following instruction:

"If you should not find, by a preponderance of the evidence, either that the plaintiffs sold said hogs contrary to the provision of the statute herein stated to you, and should fail to find that the plaintiffs, through their auctioneer stated in the presence of the plaintiffs, that the hogs were not sick or should fail to find that at the time of the sale, the said hogs were not sick then your verdict should be for the plaintiffs in the sum of $825.74 with interest from the date of January 27, 1951 at 6%."

Plaintiff argues that this instruction had the effect of placing upon plaintiff the burden of disproving three affirmative defenses pleaded by defendant. We do not so construe it. (It is true that the word "not" before the word "sick" the second time it appears in the instruction gives the impression of a double negative, however, we believe the meaning of the instruction as a whole is clear and that no person of intelligence qualifying him for jury service would be even slightly misled thereby.) A careful reading of the instruction shows that it properly places upon defendant the burden of proving his case by a preponderance of the evidence, and that in the event of his failure to do so, the jury should hold against him. It is not argued that the mere fact that the instruction is stated in a negative way is in itself error. In fact, the negative treatment of the instruction is more favorable to plaintiff than to defendant, in that it outlines a set of circumstances under which plaintiff could recover.

Plaintiff next argues that the court erred in giving conflicting and contradictory instructions. This contention of course assumes that the instructions herein were conflicting and contradictory. A careful examination of such instructions does not disclose any conflict or contradiction, and plaintiff has pointed out none in his brief.

■ Plaintiffs' last proposition is that a verdict not supported by the evidence cannot stand. Of course this is a correct general statement of the law, but we have already demonstrated in our consideration of the first group of errors alleged that there was evidence in support of the verdict. See Eden v. Vloedman, 202 Okl. 462, 214 P.2d 930, 931, 932, wherein it was said:

"Where, in actions at law, disputed questions of fact are submitted to the jury, the jury's verdict and judgment based thereon will not be disturbed on appeal where there is any evidence reasonably tending to support it."

The judgment of the trial court is affirmed.

HALLEY, C. J., and WELCH, CORN, DAVISON, O'NEAL and BLACKBIRD, JJ., concur.